IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HORACE CULLUM, } | | |
| TDCJ-CID NO.1208593, } | | |
|     Plaintiff, } | | |
| v. } | | CIVIL ACTION G-05-0437 |
| TEXAS DEPARTMENT OF CRIMINAL } | | |
| JUSTICE, *et. al.*, } | | |
|     Defendants. } | | |

OPINION ON DISMISSAL

Plaintiff, state inmate Horace Cullum, proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint alleging violations of his Eighth Amendment right to medical care (Docket Entry No.61) and a more definite statement of his claims. (Docket Entries No.81, No.83, No.85). Defendant Deborah Henneberg has filed a motion for summary judgment (Docket Entry No.70), to which plaintiff has filed a response. (Docket Entry No.86). Because plaintiff's pleadings show that his claims are frivolous, the Court will grant defendant's motion for summary judgment, deny plaintiff relief, and dismiss this case.

I. BACKGROUND

Plaintiff suffers from numerous chronic health issues including the human immunodeficiency virus, hepatitis C, diabetes, chronic obstructive pulmonary disease, hypertension, and asthma among others. (Docket Entry No.74-5, page 23). He also suffers from numerous other ailments including an inguinal hernia, a shoulder and back disorder, arthritis, heart disease, and so on. (*Id.*). As summarized by Dr. Natascha Dumas, plaintiff's medical records reflect the following history, in pertinent part, with respect to his reducible right inguinal hernia:

1

[P]laintiff was initially seen by the surgeons at UTMB April 19, 2004. At that time he was diagnosed with a reducible right inguinal hernia. For a hernia that is diagnosed as reducible and non-strangulated, surgery is not emergent.

He reported some intermittent chest pain during this evaluation. He was then referred to General Medicine for evaluation of the chest pain and medical clearance for surgery. Before Mr. Cullum could be seen by the General Medicine consultants, he was evaluated again by the surgeons as an emergent patient on May 5, 2004. The unit physician transferred him to the emergency room at UTMB for evaluation of a non-reducible right inguinal hernia. The surgeon's evaluation revealed a large right reducible inguinal hernia. He was given instructions on lifting and strenuous activity, pain medication, and was to follow up on an outpatient basis. Mr. Cullum was then evaluated by general medicine on May 25, 2004 for preoperative clearance for hernia repair. It was determined that he was an intermediate risk for surgery and further testing needed to be done prior to clearance for surgery. Mr. Cullum was seen again for the hernia by general surgery on August 9, 2004. At that time he mentioned that he had a history of bladder cancer and was recently treated by urology. He was given a follow up appointment in 4 months and was recommended to follow up with urology prior to hernia repair. The next time the plaintiff was seen by general surgery was on January 2, 2006. He was cleared by urology but did not have clearance from general medicine. The plaintiff was then referred to cardiology for a cardiac work up prior to surgery. He [was] also seen by general surgery on January 30, 2006 for the hernia but no cardiology evaluation had occurred.

Mr. Cullum was seen by medical staff on February 27, 2006. The Clinic notes state that Cullum reports not being able to exercise due to 2 hernias. He was ambulating with the use of a cane, which Cullum stated was due to spondylosis, a spinal degeneration of the joints of two or more vertebrae. His charge showed that no change was required in his medic alert status.

Mr. Cullum claims that he went to be seen on March 1, 2006 concerning his hernia. He claims that he was told to wait an additional ninety to one hundred and twenty minutes before he could be seen by Nurse Henneberg. There are no medical records to suggest that Mr. Cullum was seen at any time on March 1 nor any of the days immediately following.

Mr. Cullum was next seen on March 22, 2006 and evaluated by cardiology. A stress test was ordered as well as additional medication to control the plaintiff's blood pressure. He was seen by general surgery on July 17, 2006 and diagnosed with a large right inguinal hernia that could not be reduced. He was scheduled for surgery on July 21, 2006. The stress test was scheduled while the plaintiff was hospitalized and it was determined to be normal. The plaintiff underwent the herniorrhaphy on July 21, 2006 with no complications. He was seen for follow-up with general surgery clinic on August 7, 2006. At that time some swelling was

> noted in the right testicle but this was determined to be normal finding after the procedure and should resolve within 6 weeks postoperatively.

(Docket Entry No.77, Exhibit A).

In his Fourth Amended Complaint, plaintiff complains that defendants UTMB Doctors Riley, Loomis, Trahan, Woodside, and Brisco denied plaintiff adequate medical care by refusing a herniorrhaphy to repair the right inguinal hernia for two and one-half years, thereby allowing the hernia to increase from two inches to fifteen inches in length. (Docket Entry No.62). Plaintiff also complains that defendant Henneberg denied him medical care on March 1, 2006, when she refused to see him and ordered him to return to the infirmary at a later time. (*Id.*). Plaintiff also complains that UTMB denied him adequate medical care and that TDCJ Administrators Nathaniel Quarterman and Anthony Collins failed to protect his constitutional rights. (*Id.*).

Plaintiff seeks a declaration that his rights have been violated and a preliminary and permanent injunction ordering defendants to provide plaintiff adequate medical treatment and to stop retaliating against him by denying him treatment for other medical conditions. (*Id.*). He also seeks compensatory and punitive damages. (*Id.*).

Nurse Henneberg moves for summary judgment on grounds that she is entitled to Eleventh Amendment immunity and qualified immunity, and that she was not deliberately indifferent to plaintiff's serious medical needs. (Docket Entry No.74).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the

3

burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

Plaintiff's complaint is also subject to review under 28 U.S.C. § 1915(e)(2)(B). When a litigant proceeds *in forma pauperis*, the district court may scrutinize the basis of the complaint and, if appropriate, dismiss the case without service of process if the claim is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C. § 1997(e)(c) and 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)).

### III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *Migra*

*v.Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986). Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference–not the result of mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). The negligent deprivation of life, liberty, or property is not a constitutional violation. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Moreover, to hold a defendant liable under section 1983, plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

### A. Medical Care Claims

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate

indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

### 1. Nurse Henneberg

Plaintiff claims that on March 1, 2006, he sought medical assistance for his hernia in the Unit infirmary. (Docket Entry No.61). Plaintiff indicates that he was unable to sit in the wheelchair that the infirmary provided to transport him because his hernia was swollen. (*Id*.). With the assistance of another offender, plaintiff walked to the infirmary. (*Id.*). Plaintiff contends because of his condition, he should have received immediate attention but instead, he was forced to wait for treatment in a cage across the hall from the infirmary. (*Id*.). Plaintiff maintains that at the 5:30 p.m. shift change, the relieving security guard told him that Nurse

Henneberg had instructed plaintiff to return to his dorm and to come back to the infirmary at 7:00 p.m. (Docket Entry No.85). The security officer also told plaintiff that Henneberg had denied plaintiff's request for an ice pack. (*Id.*). Plaintiff claims that he returned to the infirmary at 7:00 p.m. and received his direct observation therapy medications. (*Id.*). Plaintiff claims that Nurse Lopez also authorized two ice packs for plaintiff to take back to his dormitory. (*Id.*). Plaintiff was informed that Henneberg had left for the day without providing plaintiff with any medical treatment. (*Id.*). Plaintiff filed grievances complaining of the same but they were denied. (*Id.*).

Plaintiff contends that Nurse Henneberg knew that plaintiff suffered excruciating pain from the hernia and knew that Drs. Owusu and Adams were trying to have UTMB surgeons perform a herniorrhaphy on plaintiff. (Docket Entry No.61). He maintains because she had such knowledge, her refusal to provide immediate treatment when he first appeared at the infirmary constitutes deliberate indifference in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (*Id.*).

Nurse Henneberg moves for summary judgment on grounds that she did not act with deliberate indifference to plaintiff's serious medical needs and that she is entitled to qualified immunity. (Docket Entry No.74). For the reasons to follow, the Court finds that it need not address the full measure of the qualified immunity analysis because plaintiff's pleadings and the medical records do not show that Henneberg acted with deliberate indifference to plaintiff's serious medical needs. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (noting threshold inquiry is whether plaintiff's allegations, if true, establish a constitutional violation); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (noting "[i]f no constitutional right would have been

violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

Plaintiff's medical records show that plaintiff was seen by medical personnel on March 1, 2006, at 7:00 a.m. and 7:00 p.m. for directly observed therapy, *i.e.*, the dispensation of plaintiff's prescribed medication. (Docket Entry No.74-4, page 4). The response to one of plaintiff's grievances, however, suggests that plaintiff sought medical assistance in the infirmary before 7:00 p.m. on March 1, 2006. The response reflects that security staff told plaintiff to return to the infirmary at 7:00 p.m. because at the time he sought assistance, medical personnel were treating inmates who required emergency care. (Docket Entry No.74-6, page 4). Another response reflects that Mr. Andrepont in the Medical Department recalled plaintiff in the outside holding area and that plaintiff left on his own. (*Id.*, page 6). Even if plaintiff's allegation that he sought assistance before 7:00 p.m. is true, he states no facts to show that he suffered any harm from the delay in obtaining medical treatment as a result of Nurse Henneberg's failure to provide him with immediate care when he first sought medical assistance. *See Mendoza*, 989 F.2d at 195 (stating that delay in obtaining medical treatment must result in substantial harm to show deliberate indifference).

Plaintiff further fails to show that his condition required emergency care that would supersede the care that Henneberg and infirmary personnel were providing to other inmates at the time. Moreover, plaintiff states no facts that would show that Henneberg wantonly, willfully, or intentionally refused to evaluate or treat him or that she exposed him to a serious risk of harm because she failed to treat him on March 1, 2006. Because neither plaintiff's pleadings nor the record evinces evidence that Nurse Henneberg acted with deliberate

indifference to plaintiff's serious medical condition by her failure to treat him on March 1, 2006, Henneberg is entitled to summary judgment on plaintiff's medical care claim as a matter of law.

### 2. UTMB Doctors

Plaintiff claims from 2004, when he first entered TDCJ, until his hernia surgery in July, 2006, he submitted numerous sick call requests for an operation to repair the hernia and that he was seen numerous times by medical personnel at UTMB, who either refused, denied, or postponed the needed surgery. (Docket Entry No.61). Plaintiff claims that such refusal, denial, or postponement of treatment reflects deliberate indifference by UTMB doctors to his serious medical needs. (*Id.*).

Plaintiff's records show that the surgery plaintiff desired was not available or was postponed because of his other medical conditions. (Docket Entry No.74-4, pages 15-16). In a Triage Interview dated August 10, 2004, plaintiff told medical personnel that the UTMB surgeon told him that he cannot have hernia surgery because he had cancer. (Docket Entry No.61-4, page 33). In response to a sick call request dated April 26, 2005, medical personnel noted that plaintiff had been seen by Tele-Med and that his appointment had been deferred. (Docket Entry No.66, page 19). Plaintiff requested a transportation pass in a sick call request dated February 14, 2006, because he was still waiting on the hernia surgery and multiple trips to different clinics, including urology, which had found more dark masses in his bladder. (*Id.*, page 39). Clinic notes dated April 6, 2005, reflect plaintiff's chief complaints were the bilateral inguinal hernia and bladder cancer and that these medical issues were followed at the Hospital in Galveston currently with multiple appointments. (Docket Entry No.83-2, page 20). Plaintiff's records also show that plaintiff received treatment for his hernia and for the discomfort caused

by such hernia, although he did not receive the surgery that he desired for two and one-half years. (Docket Entries No.83, Attachments, No.85).

Moreover, plaintiff fails to state specific facts regarding the incidents in which each UTMB doctor denied him adequate medical care as the Court instructed him to do in its Order for More Definite Statement. (Docket Entry No.70). Instead, plaintiff refers the Court to an exhibit packet, which contains plaintiff's medical records and sick call requests. (Docket Entry No.81, No.83, No.85). Consequently, plaintiff's claims are conclusory.

Furthermore, neither plaintiff's pleadings nor the record show the wantonness or recklessness to sustain a claim of deliberate indifference against UTMB doctors and medical personnel. Plaintiff's dissatisfaction with the medical treatment he received does not mean that he suffered deliberate indifference. *See e.g., Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation). Accordingly, plaintiff's claims against Doctors Riley, Loomis, Trahan, Woodside, and Brisco are subject to dismissal as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 3. Defendants Quarterman and Collins

Plaintiff's claims against Nathaniel Quarterman and Warden Anthony Collins are vague and conclusory. (Docket Entry No.61). In fact, plaintiff states nothing more than their title and their assigned responsibilities. Plaintiff states no facts to show that Quarterman or Collins had any personal involvement in plaintiff's medical care or that they held a supervisory

position over medical personnel. *See Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983) (personal involvement is an essential element of a civil rights cause of action); *Mouille v. City of Live Oak, Texas*, 977 F.2d 924, 929 (5th Cir. 1992) (each defendant must either actively participate in the acts complained of or implement unconstitutional policies that result in injury); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation). Therefore, plaintiff's claims against Quarterman and Collins are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

## B. Punitive Damages

To warrant punitive damages, plaintiff must allege facts showing that defendants' conduct was egregious or reprehensible. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Punitive damages may be awarded in § 1983 cases when the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. . . . The latter standard requires recklessness in its subjective form, *i.e.*, a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

Plaintiff states no facts to show that any defendant acted with reckless, callous, or criminal indifference to his constitutional rights. Therefore, he fails to show any entitlement to punitive damages.

### C. Official Capacity Claims

Defendant Henneberg contends that she is entitled to Eleventh Amendment immunity on plaintiff's monetary claims against her in her official capacity as a State employee. (Docket Entry No.74).

The Eleventh Amendment bars a suit in federal court by a citizen of a state against his own state or against a state agency or department. *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990). Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996). This immunity extends to suits for monetary damages against state officials in their official capacity. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").

All defendants in this case are either employees of the State of Texas or state agencies; therefore, plaintiff's claims against all defendants in their official capacities are barred by the Eleventh Amendment. *See Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002). Accordingly, to the extent that plaintiff seeks monetary damages on claims against defendants in their official capacities, such claims are subject to dismissal.

### D. Injunctive Relief for Retaliation

In his grievance complaining of Nurse Henneberg's failure to treat him, plaintiff complained that Henneberg refused to treat him on March 1, 2006, because she was aware of the

12

present lawsuit. (Docket Entry No. 74-6, pages 4-6). In his Fourth Amended Complaint, plaintiff requests a preliminary and permanent injunction ordering defendants to stop retaliating against him by denying him adequate medical treatment and equipment that he needs for particular medical conditions. (Docket Entry No.61). Plaintiff's request will be denied for the reasons to follow.

To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *See Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). For a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004). Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). An injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

In this case, plaintiff's allegations of retaliation are legally frivolous and conclusory. To state a valid claim for retaliation under section 1983, an inmate must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188

13

F.3d 322, 324-25 (5th Cir. 1999). The inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id*. (citation omitted). Finally, causation requires a showing that "but for the retaliatory motive the adverse action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Neither plaintiff's pleadings nor the record reflect evidence of defendants' intent to retaliate against plaintiff because he filed the present suit or any deprivation of medical care or equipment because he filed such suit. To the extent that plaintiff complains of retaliation, such claim is subject to dismissal as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). Because he cannot prevail on the merits of this retaliation claim, plaintiff fails his burden of persuasion; therefore, his request for injunctive relief is denied.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

2. Defendant Henneberg's motion for summary judgment (Docket Entry No.74) is GRANTED. All claims against Nurse Deborah Henneberg are DISMISSED with prejudice.

3. Plaintiff's claims against all remaining defendants are DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

4. Defendant Henneberg's motion for Assistant Attorney General Adam A Auchter to appear *pro hac vice* (Docket Entry No. 75) is GRANTED.

5. All other pending motions are DENIED.

The Clerk will provide a copy of this order by facsimile transmission, regular mail, or e-mail to the parties and to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793, and the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas  75702, Attention: Manager of the Three-Strikes List.

SIGNED at Houston, Texas, this 24th day of September, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE